**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| JONATHON MESKAUSKAS,       ) | |
| # R-44760,       ) | |
|       ) | |
|     **Plaintiff,**       ) | |
|       ) | |
| vs.       ) | **Case No. 15-cv-00431-MJR** |
|       ) | |
| JASON B. BUSKOHL, C/O WILLIS,       ) | |
| C/O BERRY, SGT. MACIURA,       ) | |
| JOHN DOE, LT. REICHERT,       ) | |
| C/O SPILLER, C/O HECHT,       ) | |
| ROBERT H. HUGHES, JASON N. HART,  ) | |
| RICHARD HARRINGTON, DR. TROST,  ) | |
| JANE DOE, and       ) | |
| WEXFORD HEALTH SERVICES,       ) | |
|       ) | |
|     **Defendants.**       ) | |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff Jonathon Meskauskas, an inmate who is currently incarcerated at Pontiac Correctional Center ("Pontiac"), brings this *pro se* action pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights at Menard Correctional Center ("Menard"). Plaintiff claims that he was assaulted by several Menard officials, denied adequate medical care for his injuries, and issued two baseless disciplinary tickets in retaliation for reporting the staff assault. Following an unfair disciplinary hearing, Plaintiff was then punished with two years of segregation in deplorable conditions at Menard and Pontiac (Doc. 1, pp. 14-37). Plaintiff now sues numerous Menard officials,[1] Wexford Health Services ("Wexford"), and Wexford officials[2]

---

[1] In the complaint, Plaintiff identifies the following known Defendants at Menard: C/O Buskohl, C/O Willis, C/O Berry, C/O Spiller, C/O Hart, C/O Hecht, Sergeant Maciura, Lieutenant Reichert, Lieutenant Hughes, and Warden Harrington. Plaintiff also identifies the following unknown Defendants at Menard: C/O John and Jane Does (Defendants #5) (various officers who failed to intervene and stop the staff assault on February 3, 2014), C/O John Doe (Defendant #12) (officer who failed to serve

for violating his rights under the First, Eighth, and Fourteenth Amendments.  He seeks monetary damages, declaratory judgment, and injunctive relief (Doc. 1, pp. 36-37).

## Merits Review Under 28 U.S.C. § 1915A

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A.  Under Section 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims.  28 U.S.C. § 1915A(a).  The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief.  28 U.S.C. § 1915A(b).  Plaintiff's complaint survives preliminary review under this standard.

## The Complaint

While Plaintiff was eating lunch at Menard on February 3, 2014, a fight broke out between two inmates (Doc. 1, p. 14).  An officer in a nearby tower fired his weapon, and Plaintiff dropped to the floor in a "non-combative defenseless position."  As he did so, several officers rushed through the dining room doors, screaming and blanketing the area with pepper spray (Doc. 1, pp. 14-15).  In the process, Officer Buskohl sprayed pepper spray directly into Plaintiff's eyes.  As Plaintiff coughed and gasped for air while rolling on the ground, Officer Buskohl kicked Plaintiff in his nose, causing it to "bust and bleed profusely" (Doc. 1, p. 15).  None of the other responding officers, including Officers Willis, Berry, Maciura, or other

Plaintiff with two disciplinary tickets), and C/O John Doe (Defendant #13) (officer who denied Plaintiff access to property and cleaning supplies in segregation at Menard), and C/O John Doe (Defendant #19) (officer responsible for conditions in Menard's North II segregation unit).
[2] Plaintiff identifies the following Wexford officials as Defendants: Doctor Trost, Nurse Jane Doe (Defendant #15) (nurse who refused Plaintiff's request for a shower to rinse pepper spray from his hair), Nurse Jane Doe (Defendant #16) (nurse who refused to refer Plaintiff for medical care), and John or Jane Doe (Defendant #18) (individual responsible for processing requests for mental health treatment).

unknown "John and Jane Doe" correctional officers (Defendants #5), intervened to protect Plaintiff from the assault.

Following the incident, Plaintiff was taken to Menard's healthcare unit ("HCU"), where he was seen by Nurse Jane Doe (Defendant #15) and Doctor Trost (Doc. 1, p. 16). Nurse Jane Doe (Defendant #15) rinsed the pepper spray from Plaintiff's eyes, but not his hair, and observed so much blood that she asked Plaintiff whether he was a hemophiliac. Doctor Trost did not respond to Plaintiff's complaints of pain.

Plaintiff was then taken to North II for an interview by Correctional Officers Hecht and Spiller (Doc. 1, p. 16). During the interview, Plaintiff denied any involvement in the fight. He reported the staff assault by Defendant Buskohl. Officer Spiller told Plaintiff that he was a "disgrace to his race." Lieutenant Reichert entered the room and called Plaintiff a "coward" for failing to take responsibility for his actions (Doc. 1, p. 17). Lieutenant Reichert then struck Plaintiff in the nose, causing it to "bust again." The two officers grabbed Plaintiff by his arms, lifted him into the air, and slammed him onto a desk. They dragged him over to a metal bar that was protruding from the ground and slammed his head directly onto the bar. Plaintiff instantly "saw stars," heard a ringing sound, and suffered extreme pain. Officer Spiller kicked Plaintiff in the back of his thigh. All the while, Officer Hecht stood by watching, without taking any steps to intervene and protect Plaintiff from further injury (Doc. 1, p. 18).

Nurse Lane,[3] who was in a nearby room, administered medical treatment. She placed gauze in Plaintiff's nose to control the bleeding. She diagnosed him with a cut on his head that did not require stitches. She also observed a racquetball-sized lump forming on his head and recommended that Plaintiff receive x-rays in the main HCU.

---

[3] Nurse Lane is not named as a defendant in this action.

Plaintiff returned to the main HCU for a second round of treatment by Nurse Jane Doe (Defendant #15) and Doctor Trost (Doc. 1, p. 18).  He was still bleeding profusely.  Even so, Doctor Trost refused to take x-rays or prescribe pain medication.  Plaintiff was instead given a tetanus shot.  He claims that he broke his nose, but the injury was never formally diagnosed or treated.  As a result, Plaintiff is now disfigured.  He further claims that Nurse Jane Doe (Defendant #15) and Doctor Trost failed to properly document his injuries.

Plaintiff also claims that he was denied x-rays and medication because of Wexford Health Services' ("Wexford") policy of elevating cost over care.  To save money, Wexford hires incompetent health care providers and fails to train them.  These employees provide "subpar treatment that saves money and benefits Wexford's bottom line" (Doc. 1, pp. 20, 22).

Plaintiff was ultimately taken to segregation.  Once there, C/O John Doe (Defendant #13) denied Plaintiff's request for a shower to rinse the pepper spray from his hair.  He instead rinsed his hair in a sink, which caused the pepper spray to get into his eyes and sting them once again.  He was also given no soap, sheets, blankets or property for two days.  When Plaintiff asked for these items, C/O John Doe (Defendant #13) said, "Staff assaulters don't get that."

Plaintiff stopped Nurse Jane Doe (Defendant #16) and told her that he was nauseous, his head was throbbing, his vision was blurry, and his nose was likely broken.  Nurse Jane Doe (Defendant #16) instructed him to fill out a health care request slip.  When Plaintiff explained that he had no pen or paper to do so, she told him that "was too bad" and walked away (Doc. 1, p. 21).  He did not receive the supplies he needed to fill out a request for medical care until two days later.  From that point forward, Plaintiff submitted a steady stream of health care requests for the remainder of the month, but he was not called to the HCU for treatment.

Without warning on February 6, 2014, Plaintiff was taken to a disciplinary hearing before Lieutenant Hughes and Officer Hart (Doc. 1, p. 22).  It was there that Plaintiff first learned about two disciplinary tickets he had been issued, i.e., one for 104-dangerous disturbance, 301-fighting, and 403-disobeying a direct order and the second for 102-assaulting a staff member (Lieutenant Reichert) and 110-impeding or interfering with an investigation (Doc. 1, pp. 22-23).  Plaintiff immediately requested a continuance, so that he could prepare a defense, call witnesses, or obtain staff assistance.  Lieutenant Hughes and Officer Hart denied his request.  He was found guilty of the rule violations and punished with two years in segregation (Doc. 1, p. 23).

The conditions in segregation at Menard were deplorable (Doc. 1, p. 26).  Plaintiff was forced to share a small cell with another inmate.  The cell lacked sufficient space for exercise, and opportunities for outside exercise were limited to one session per week.  Plaintiff spent his days sitting on his bottom bunk with his head hitting the top bunk (Doc. 1, p. 27).  He developed bed sores, back pain, cramps, and muscle atrophy.  The cloth mattress was filthy, the bed frames were rusted, and the back wall was covered in black mold.  The nearby shower caused his cell to reek of urine, feces, and mildew.  Plaintiff was allowed to shower no more than once a week (Doc. 1, p. 28).  He was given inadequate nourishment and lost over twenty pounds (Doc. 1, p. 27).  Because he remained behind steel doors with a cellmate, Plaintiff constantly feared an assault.  His requests for mental health treatment were denied by John or Jane Doe (Defendant #18) (Doc. 1, p. 28).  Plaintiff endured these conditions for more than two months, until he transferred to Pontiac.

The conditions that Plaintiff faced at Pontiac were worse.  He received an identification card that clearly identified him as a "staff assaulter."  Because of this label, Plaintiff was singled out for particularly poor treatment.

For the first two days at Pontiac, he was placed in the "bug house," a segregation unit reserved for the most seriously mentally ill inmates (Doc. 1, p. 29). Plaintiff was assigned to a "suicide watch cell." The cell, including the water faucet, was covered in feces, urine, and blood. When allowed outside into the prison yard, inmates were forced to stand in "single man dog kennel[s]" placed side-by-side in the prison yard. Instead of exercising, Plaintiff stood in the "kennel" watching grown men throw urine and feces at one another. When Plaintiff asked Officer Baylor[4] why he had been placed in these conditions, the officer explained that it was because Plaintiff was a "staff assaulter" (Doc. 1, p. 30).

For the next six months, Plaintiff was housed in Pontiac's North House. The rodent problem was particularly bad there. Black bugs entered his cell through the vents, which were coated in several "inches" of dust. The cells generally smelled of urine and feces. He could not attend religious services (Doc. 1, p. 31). He lost phone privileges, contact visits, and television access. He also lost access to the prison commissary and, unable to supplement his diet, lost an additional fifteen pounds. In addition, Plaintiff was denied access to dental hygiene items.

Because he is now identified as a "staff assaulter," Plaintiff will be placed in a three-year "black stripe" program after he is released from segregation. In this program, "staff assaulters" are placed in black-and-white-striped jumpsuits, housed with other staff assaulters and weapons violators, and isolated from all other inmates. Plaintiff anticipates an increased risk of violence, once he transitions into this program.

Prior to the events described herein, Plaintiff was not subject to any disciplinary action. He entered the custody of the Illinois Department of Corrections in 2005. For nearly nine years, his disciplinary record was allegedly clean.

---

[4] Officer Baylor is not named as a defendant in this action, and Plaintiff asserts no claims against this individual.

Plaintiff now seeks declaratory judgment, monetary damages, and injunctive relief (Doc. 1, pp. 36-37). This includes a new adjustment committee hearing on the disciplinary tickets at issue in this case.

### Discussion

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court finds it appropriate to organize the claims in Plaintiff's *pro se* complaint into ten separate counts that are consistent with the claims set forth therein:

**Count 1:** Eighth Amendment excessive force claim against Defendant Buskohl for the alleged assault that occurred on February 3, 2014 (Doc. 1, p. 32);

**Count 2:** Eighth Amendment failure to protect claim against Defendants Willis, Berry, Maciura, and C/O John and Jane Does (Defendants #5) for failing to intervene and stop Defendant Buskohl's assault of Plaintiff on February 3, 2014 (Doc. 1, p. 33);

**Count 3:** Eighth Amendment excessive force claim against Defendants Reichert and Spiller for assaulting Plaintiff on February 3, 2014 (Doc. 1, p. 33);

**Count 4:** Eighth Amendment failure to protect claim against Defendant Hecht for failing to intervene and stop the assault by Defendant Reichert and Spiller on February 3, 2014 (Doc. 1, p. 33);

**Count 5:** First Amendment retaliation claim against Defendants Reichert and Spiller for assaulting Plaintiff after he reported Defendant Buskohl's misconduct on February 3, 2014 (Doc. 1, p. 33);

**Count 6:** Fourteenth Amendment claim against Defendants Hughes, Hart, Harrington, and C/O John Doe (Defendant #12) for denying Plaintiff the right to due process of law in connection with his disciplinary tickets and hearing (Doc. 1, p. 34);

**Count 7:** Eighth Amendment deliberate indifference to serious medical needs claim against C/O John Doe (Defendant #13) for denying Plaintiff access to a shower and soap for use in rinsing pepper spray from his hair (Doc. 1, p. 34);

**Count 8:**    Eighth Amendment deliberate indifference to serious medical needs claims against Defendants Trost, Nurse Jane Doe (Defendant #15), Nurse Jane Doe (Defendant #16), and John or Jane Doe (Defendant #18) (Doc. 1, p. 35);

**Count 9:**    Eighth Amendment deliberate indifference to medical needs claim against Defendant Wexford for failing to train its staff to provide adequate medical care, instead opting to elevate the cost of care over the quality of care provided (Doc. 1, p. 35); and

**Count 10:**   Eighth Amendment claim against Defendant John Doe (Defendant #19) for subjecting Plaintiff to unconstitutional conditions of confinement at Menard (Doc. 1, p. 35).

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.  The designation of these claims does not constitute an opinion as to their merit.

All claims, except Count 7, survive preliminary review under Section 1915A. This includes Counts 1-6 and 8-10, which shall proceed against only those defendants who are identified in connection with each claim below.  Count 7 shall be dismissed without prejudice.

## Claims Subject to Further Review

### Counts 1 & 3 – Excessive Force

The complaint articulates two colorable excessive force claims.  The first claim is against Defendant Buskohl for kicking Plaintiff in the face and allegedly breaking his nose after spraying him with pepper spray on February 3, 2014 (**Count 1**).   The second claim is against Defendants Reichert and Spiller for hitting Plaintiff in the face, kicking him in the thigh, and slamming his head onto a metal post on February 3, 2014 (**Count 3**).

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under Section 1983.  *See Wilkins v. Gaddy*, 559 U.S. 34 (2010);

*DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000).   To state an excessive force claim, an inmate must show that an assault occurred, and that "it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" *Wilkins*, 559 U.S. at 40 (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)).   In this case, the complaint suggests that these Defendants violated the Eighth Amendment by assaulting Plaintiff without provocation and without penological justification on February 3, 2014.

However, the complaint states no excessive force claim against anyone else. Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation."   *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted).   The complaint does not allege that any other Defendants assaulted Plaintiff on February 3, 2014.

Based on the foregoing discussion, **Count 1** shall proceed against Defendant Buskohl, but shall be dismissed without prejudice against all other defendants.   **Count 3** shall proceed against Defendants Reichert and Spiller, but shall be dismissed without prejudice against all other defendants.

**Counts 2 & 4 – Failure to Protect**

The complaint also supports an Eighth Amendment claim against Defendants Willis, Berry, Maciura, and C/O John and Jane Does (Defendants #5) for failing to intervene and stop Defendant Buskohl's assault on Plaintiff (**Count 2**).   Similarly, the complaint articulates a viable Eighth Amendment failure to protect claim against Defendant Hecht, who allegedly stood by and watched Defendants Reichert and Spiller assault Plaintiff (**Count 4**).

A plaintiff asserting a failure to protect claim must show that he was incarcerated under conditions posing a substantial risk of serious harm, and Defendants acted with "deliberate indifference" to that danger.  *See Farmer v. Brennan*, 511 U.S. 825 (1994); *Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006).  A plaintiff also must prove that prison officials were aware of a specific, impending, and substantial threat to his safety, often by showing that he complained to prison officials about a *specific* threat to his safety before the assault actually occurred.  *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996).  In other words, Defendants had to know that there was a substantial risk that those who attacked Plaintiff would do so, yet failed to take any action.  *See Sanville v. McCaughtry*, 266 F.3d 724, 733-34 (7th Cir. 2001).

The defendants named in connection with Counts 2 and 4 were allegedly present during the assaults and stood by watching the events unfold without taking steps to protect Plaintiff from further harm.  The allegations suggest that Defendants Willis, Berry, Maciura, C/O John and Jane Does (Defendants #5), and Hecht exhibited deliberate indifference toward Plaintiff.  Accordingly, **Count 2** shall proceed against Defendants Willis, Berry, Maciura, C/O John and Jane Does (Defendants #5), and **Count 4** shall proceed against Defendant Hecht at this early stage.

However, the allegations do not support an Eighth Amendment failure to protect claim against any other defendants; no other defendants are mentioned in connection with these claims. Therefore, Counts 2 and 4 shall be dismissed without prejudice against them.  *See Pepper*, 430 F.3d at 810 (liability under Section 1983 requires personal involvement in the constitutional deprivation).

**Count 5 – Retaliation**

Plaintiff shall be allowed to proceed with his retaliation claim (**Count 5**) against

Defendants Reichert and Spiller.   Plaintiff claims that these defendants responded to his complaints about Defendant Buskohl by assaulting, and further injuring, him.   The complaint suggests that Defendants Reichert and Spiller took this action to discourage Plaintiff from reporting Defendant Buskohl's alleged misconduct.

Prisoners have a First Amendment right to free speech, *see Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 125 (1977); *Martin v. Brewer,* 830 F.2d 76, 77 (7th Cir. 1987), and restrictions on that right will be upheld only if they are "reasonably related to legitimate penological interests," *see Thornburgh v. Abbott,* 490 U.S. 401, 413 (1989) (citing *Turner v. Safley,* 482 U.S. 78, 89 (1987)); *Massey v. Wheeler,* 221 F.3d 1030, 1035 (7th Cir. 2000).   Prison officials may not retaliate against an inmate for exercising his First Amendment rights, even if their actions would not independently violate the Constitution. *See Zimmerman v. Tribble,* 226 F.3d 568, 573 (7th Cir. 2000); *DeWalt v. Carter,* 224 F.3d 607, 618 (7th Cir. 2000) ("a prison official may not retaliate against a prisoner because that prisoner filed a grievance"); *Babcock v. White,* 102 F.3d 267, 275 (7th Cir. 1996) (retaliatory transfer); *Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996) (retaliation for filing lawsuit); *Murphy v. Lane*, 833 F.2d 106, 108-09 (7th Cir. 1987) (per curiam) (retaliation for filing suit).

"A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'"   *Zimmerman,* 226 F.3d at 573 (citation omitted). The factual allegations offered in the complaint present a colorable claim of retaliation; they suggest that Plaintiff was subject to a second assault because he reported the first staff assault. Therefore, the Court cannot dismiss the retaliation claim at this time.   28 U.S.C. § 1915A; *see Zimmerman,* 226 F.3d at 574 (reversing district court's Section 1915A dismissal because inmate's allegations established that "the exercise of his [First Amendment] right was closely

followed by the retaliatory act").

Accordingly, **Count 5** shall proceed against Defendants Reichert and Spiller. The allegations do not mention any other defendants in connection with this claim, so Count 5 shall be dismissed without prejudice against all other defendants. *See Pepper*, 430 F.3d at 810.

**Count 6 – Due Process**

Plaintiff's claim against Defendants Hughes, Hart, Harrington, and C/O John Doe (Defendant #12) for denying him due process of law in connection with the hearing on his two disciplinary tickets (**Count 6**) shall receive further review.  According to the complaint, Plaintiff was denied procedural protections in connection with both disciplinary tickets (e.g., advance written notice, the opportunity to prepare a defense, or the opportunity to call witnesses).  Even so, he was found guilty on February 6, 2014, and punished with two years in segregation, among other thing.[5]

An "inmate's liberty interest in avoiding segregation is limited." *Hardaway v. Meyerhoff, et al.*, 734 F.3d 740 (7th Cir. 2013) (quoting *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009)).  Under certain circumstances, an inmate punished with segregation can pursue a claim for deprivation of a liberty interest without due process of law. *See Marion*, 559 F.3d at 697-98.  The allegations in the operative complaint support a due process claim.

Plaintiff was allegedly issued a disciplinary ticket without notice and denied the opportunity to prepare a defense or call witnesses at his disciplinary hearing.  An inmate facing disciplinary charges is entitled to: (1) receive advance written notice of the charges against him;

---

[5] He also complains that he was denied contact visits and access to commissary.  With the exception of Plaintiff's placement in segregation, these allegations do not present a viable constitutional claim that warrants a detailed discussion.  There is no protected liberty interest in Plaintiff's loss of status or his access to the prison's commissary. *See, e.g.*, *Thomas v. Ramos*, 130 F.3d 754, 762 n.8 (7th Cir. 1997).

(2) appear in person before an impartial hearing body to contest the charges; (3) call witnesses and present documentary evidence in his defense (subject to the discretion of correctional officials); and (4) receive a written statement of the reasons for the disciplinary action taken. *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974); *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988). The allegations in the complaint suggest that the disciplinary hearing violated the requirements for due process set forth in *Wolff*.

Further, the allegations suggest that the two-year period of confinement in segregation has, to date, "imposed an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Hardaway*, 734 F.3d at 743 (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Courts must consider two factors in determining whether disciplinary segregation imposes atypical and significant hardships: "the combined import of the duration of the segregative confinement *and* the conditions endured." *Id.* at 743 (citing *Marion*, 559 F.3d at 697-98) (emphasis in original)).

Although "relatively short terms of segregation rarely give rise to a prisoner's liberty interest" in the absence of exceptionally harsh conditions, a liberty interest may arise from longer terms of confinement, triggering the need for further factual inquiry into the conditions of a prisoner's confinement. *See, e.g., Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005) (analyzing conditions of confinement but noting that prisoner's segregation "was still not so long as to work an atypical and significant hardship") (90 days); *Marion*, 559 F.3d at 698 (holding that the issue of whether 240 days in disciplinary segregation would implicate protected liberty interest could not be decided at pleading stage). In cases involving longer periods of confinement in segregation, the Seventh Circuit has instructed district courts to consider the *actual* conditions of confinement, in order to determine whether a liberty interest is implicated.

This entails a fact-based inquiry into all of the circumstances of the prisoner's confinement. *Marion*, 559 F.3d at 699.

Plaintiff has been punished with two years in segregation, under conditions at Menard and Pontiac that he describes as constitutionally inadequate.  He mentions a number of questionable conditions, in support of his due process claim.  Plaintiff seeks injunctive relief, in the form of a new hearing on the disciplinary tickets.  The Court will give this claim further consideration.

Accordingly, Plaintiff shall be allowed to proceed with **Count 6** against Defendants Hughes, Hart, Harrington, and John Doe (Defendant #12).  The claim shall be dismissed against all other defendants without prejudice.

## Count 8 – Deliberate Indifference to Medical Needs

The complaint also supports an Eighth Amendment claim for deliberate indifference to medical needs (**Count 8**) against Defendants Trost and Nurse Jane Doe (Defendant #16), but not against Nurse Jane Doe (Defendant #15) and John or Jane Doe (Defendant #18).  Relevant to Plaintiff's claim, the Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2006) (*per curiam*).  To state a claim, "[t]he plaintiff must show that (1) the medical condition was objectively serious, and (2) the state officials acted with deliberate indifference to his medical needs, which is a subjective standard."  *Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000).

To establish deliberate indifference, Plaintiff "must demonstrate that prison officials acted with a "'sufficiently culpable state of mind.'"  *Greeno v. Daley*, 414 F.3d 645, 653

(7th Cir. 2005) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).  Officials must "know of and disregard an excessive risk to inmate health" by being "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists'" and "'draw[ing] the inference.'"  *Greeno*, 414 F.3d at 653 (quoting *Farmer*, 511 U.S. at 834).  Plaintiff is not required to establish that the officials "intended or desired the harm that transpired," but to instead show that they "knew of a substantial risk of harm . . . and disregarded it."  *Greeno*, 414 F.3d at 653.  Against this backdrop, the Court will consider each of the deliberate indifference to medical needs claims against Defendants Trost, Nurse Jane Doe (Defendant #16), John or Jane Doe (Defendant #18), and Nurse Jane Doe (Defendant #15).

1.      **Defendant Trost**

The complaint supports a deliberate indifference claim against Defendant Trost, who met with Plaintiff about his assault-related injuries twice on February 3, 2014, but took no action to diagnose or treat Plaintiff's symptoms of pain and his broken nose.  Count 8 shall proceed against this defendant.

2.      **Nurse Jane Doe (Defendant #16)**

Likewise, the complaint suggests that Nurse Jane Doe (Defendant #16) may have responded to Plaintiff's complaints of nausea, head pain, blurry vision, and a broken nose with deliberate indifference.  She instructed Plaintiff to submit a written request for treatment and then told him that it was "too bad" that he lacked the tools necessary to do so (Doc. 1, p. 21).  Her complete disregard of Plaintiff's complaints suggests that she may have been deliberately indifferent to Plaintiff's serious medical needs.  Count 8 shall also proceed against this defendant.

### 3.     John or Jane Doe (Defendant #18)

However, the complaint does not support a claim against John or Jane Doe (Defendant #18), in connection with Plaintiff's request to see a counselor.  The allegations in the complaint offer no information about the mental health condition that gave rise to Plaintiff's request for treatment.  Absent any information about the condition, the Court cannot find that it was objectively serious.  The allegations also fail to adequately explain what role John or Jane Doe (Defendant #18) played in allegedly denying Plaintiff access to treatment.  Given this lack of information, the Court also cannot find that the subjective component of the Eighth Amendment claim is satisfied.  For these reasons, Count 6 shall be dismissed against John or Jane Doe (Defendant #18) without prejudice.

### 4.     Nurse Jane Doe (Defendant #15)

The complaint supports no claim against Nurse Jane Doe (Defendant #15). This defendant treated Plaintiff's assault-related injuries twice on February 4, 2013.  The first time, she rinsed the pepper spray from Plaintiff's eyes, but not his hair, and observed so much blood that she asked Plaintiff whether he was a hemophiliac.   The second time, it is unclear what role she played in Plaintiff's treatment.   Plaintiff simply alleges that Nurse Jane Doe (Defendant #15) maintained inadequate records of Plaintiff's injuries.

The fact that this defendant rinsed Plaintiff's eyes, but not his hair, of pepper spray does not rise to the level of deliberate indifference.  To being with, there is no indication that the presence of pepper spray in Plaintiff's hair constituted a serious medical condition.  Even if it did, the complaint sets forth no allegations suggesting that Nurse Jane Doe (Defendant #15) knew about the condition, was consciously aware of the risk it posed, and disregarded the risk.

In addition, the failure to document all of Plaintiff's injuries in a manner that he considers

adequate does not constitute deliberate indifference.   At most, this rises to the level of negligence, given the other factual allegations set forth in the complaint.   And negligence is not actionable under Section 1983.   *See Armato v. Grounds*, 766 F.3d 713, 721 (7th Cir. 2014) (citing *McGee v. Adams*, 721 F.3d 474, 480-81 (7th Cir. 2013) (noting that deliberate indifference requires more than negligence).   Accordingly, Plaintiff cannot proceed with Count 6 against Defendant Nurse Jane Doe (Defendant #15).

**Count 9 – Wexford's Failure to Train**

Plaintiff pursues an Eighth Amendment deliberate indifference to medical needs claim against Wexford under alternative theories.   Under the first theory, the complaint suggests that Wexford was deliberately indifferent to Plaintiff's medical needs under a *respondeat superior* theory of liability, based on the wrongful acts of Defendants Trost and the nursing staff. If applicable to Plaintiff's claims, a theory of liability based on *respondeat superior* could allow him to recover from Wexford for the unconstitutional acts of its employees.   Under controlling legal precedent, however, a private corporation *cannot* be held liable under Section 1983 "unless the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself [because] [*r*]*espondeat superior* liability does not apply to private corporations under [Section] 1983." *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014) (citing *Iskander v. Village of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)).   Although the Seventh Circuit in *Shields* questioned whether a private corporation, like Wexford, should be able to take advantage of the holding in *Monell*, the Seventh Circuit did not hold otherwise.   *Id.* At 789-96.   Accordingly, Plaintiff cannot proceed with a claim against Wexford on this basis.

But Plaintiff also pursues an alternative theory of liability in the complaint.   He claims

that Wexford instituted a "cost over care" policy, custom, or practice that deprived him of constitutionally adequate care. Under this latter theory, Plaintiff shall be allowed to proceed with **Count 9** against Wexford at this early stage.

**Count 10 – Conditions of Confinement at Menard**

Plaintiff shall be allowed to proceed with an Eighth Amendment conditions of confinement claim against Defendant C/O John Doe (Defendant #19) (**Count 10**). Relevant to Plaintiff's conditions of confinement claims, the Eighth Amendment prohibits cruel and unusual punishment and is applicable to the states through the Fourteenth Amendment. The Eighth Amendment has been a means of improving prison conditions that were constitutionally unacceptable. *See, e.g., Robinson v. California*, 370 U.S. 660, 666 (1962); *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994). As the Supreme Court noted in *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981), the amendment reaches beyond barbarous physical punishment to prohibit the unnecessary and wanton infliction of pain and punishment grossly disproportionate to the severity of the crime. *Id.* (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).

Not all prison conditions trigger Eighth Amendment scrutiny—only deprivations of basic human needs like food, medical care, sanitation and physical safety. *Rhodes,* 452 U.S. at 346; s*ee also James v. Milwaukee County*, 956 F.2d 696, 699 (7th Cir. 1992). However, "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise-for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson v. Seiter,* 501 U.S. 294, 304 (1991).

Jail officials violate the Eighth Amendment when they are deliberately indifferent to adverse conditions that deny "the minimal civilized measure of life's necessities," including sanitation. *Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994)).

The conditions described at Menard support a conditions of confinement claim at this early stage. The complaint describes numerous conditions that, when standing alone, might not support an independent Eighth Amendment claim (e.g., double-celling, small cell size, limitations on outside exercise to once weekly). When considered in combination with other conditions (e.g. lack of exercise opportunities inside and outside of cell, mold, contamination of cell with feces and urine, lack of cleaning supplies), however, the Court cannot dismiss this claim. Accordingly, **Count 10** shall proceed against Defendant John Doe (Defendant #19) at this early stage.

Plaintiff asserts no other conditions of confinement claim against any other defendant. To be clear, this includes a claim arising from the conditions at Pontiac. Correctly so, Plaintiff offered information regarding these conditions in support of his Fourteenth Amendment due process claim (Count 6). However, he did not separately assert an Eighth Amendment conditions of confinement claim against a Pontiac official. Therefore, the Court did not consider the merits of such a claim. And given the fact that Pontiac is located in a different judicial district, it is possible that Plaintiff intends to bring this claim in another Court. He is, of course, free to do so.

### Claim Subject to Dismissal

**Count 7 – Deliberate Indifference to Medical Needs Claim Against Defendant #13**

Count 7 does not survive preliminary review. This is true regardless of whether the Court

views this claim as a conditions of confinement claim or a deliberate indifference to medical needs claim under the Eighth Amendment.

The medical needs claim against C/O John Doe (Defendant #13) fails for the same reason that this same claim fails against Nurse Jane Doe (Defendant #15). The Court fully incorporates its reasoning for dismissing that claim in Count 8 herein.

When viewed as a conditions of confinement claim, Count 7 still fails to pass muster under Section 1915A. Plaintiff alleges that he was deprived of soap and a shower for two days. The short term deprivation of hygiene supplies does not give rise to an Eighth Amendment claim. *See, e.g., Lunsford v. Bennett*, 17 F.3d 1574, 1980 (7th Cir. 1994) (24-hour delay in providing hygiene supplies is not the type of extreme deprivation required to establish an objective violation of the Eighth Amendment); *Harris v. Fleming*, 839 F.2d 1232, 1235-36 (7th Cir. 1998) (confinement in a "filthy roach-infested" cell without articles of hygiene for five to ten days did not violate the Eighth Amendment); *Johnson v. Pelker*, 891 F.2d 136, 138-39 (7th Cir. 1989) (unpleasantness of prison conditions were relatively temporary); *see also Bono v. Saxbe*, 620 F.2d 609, 613 (7th Cir. 1980) (generally harsher conditions in segregation do not violate the Eighth Amendment). Because the deprivation of hygiene items was short term and limited in scope, no Eighth Amendment claim arises from this deprivation.

For the reasons set forth above, **Count 7** shall be dismissed without prejudice against C/O John Doe (Defendant #13) for failure to state a claim upon which relief may be granted.

### Identification of Unknown Defendants

Plaintiff shall be allowed to proceed with several claims against currently unidentified defendants, including Count 2 against C/O Jane and John Does (Defendants #5), Count 6 against Defendant C/O John Doe (Defendant #12), Count 8 against Nurse Jane Doe (Defendant #16),

and Count 10 against Defendant C/O John Doe (Defendant #19).  These individuals must be identified with particularity before service of the complaint can be made on them.  Where a prisoner's complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery in order to ascertain the identity of those defendants.  *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009).  Guidelines for discovery will be set by the United States Magistrate Judge.  Once the names of these unknown defendants are discovered, Plaintiff shall file a motion to substitute each newly identified defendant in place of the generic designations in the case caption and throughout the complaint.

## Disposition

**IT IS HEREBY ORDERED** that **COUNT 7** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

The Clerk is **DIRECTED** to **TERMINATE** Defendants "John Doe (1-4 Correctional Officers)" and "Jane Doe (1 & 2 Nurses)" and **ADD** the following defendants as parties to this action in CM/ECF: C/O Jane and John Does (Defendants #5), C/O John Doe (Defendant #12), Nurse Jane Doe (Defendant #16), and C/O John Doe (Defendant #19).

**IT IS FURTHER ORDERED** that with regard to **COUNTS 1, 2, 3, 4, 5, 6, 8, 9,** and **10,** the Clerk of Court shall prepare for Defendants **BUSKOHL, WILLIS, BERRY, MACIURA, REICHERT, SPILLER, HECHT, HUGHES, HARRINGTON, TROST,** and **WEXFORD HEALTH SERVICES**:  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's

place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that service shall not be made on the unknown defendants (Defendants John or Jane Does ##5, 12, 16, and 19) until such time as Plaintiff has identified them by name in a properly filed motion for substitution. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

**IT IS ALSO ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Stephen C. Williams** for further pre-trial proceedings, including expedited discovery aimed at identifying Defendants John or Jane Does ##5, 12, 16, and 19.

Further, this entire matter is **REFERRED** to United States Magistrate Judge **Williams** for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will

cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: May 19, 2015**

<u>s/ MICHAEL J. REAGAN</u>
**U.S. Chief District Judge**