IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JONATHON MESKAUSKAS | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 15-cv-431-MJR-SCW |
| | ) |
| JASON B. BUSKOHL, | ) |
| C/O WILLIS, | ) |
| C/O BARRY, | ) |
| SGT. MACIURA, | ) |
| LT. REICHERT, | ) |
| C/O SPILLER, | ) |
| C/O HECHT, | ) |
| ROBERT H. HUGHES, | ) |
| JASON N. HART, | ) |
| RICHARD HARRINGTON, | ) |
| DR. TROST, | ) |
| WEXFORD HEALTH SERVICES, | ) |
| C/O JANE AND JOHN DOES, | ) |
| C/O JOHN DOES 12 & 19, and | ) |
| NURSE JANE DOE, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

I. INTRODUCTION

*Pro Se* Plaintiff Jonathon Meskauskas, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed the suit at bar pursuant to 42 U.S.C. § 1983. He alleges that while incarcerated at Menard Correctional Center ("Menard"), he was assaulted by several Menard officials, denied adequate medical care, and issued two baseless disciplinary tickets in retaliation for reporting the staff assault. Plaintiff was

placed in segregation, and he also brings claims alleging unconstitutional conditions of confinement during his segregation.

As part of his suit, Plaintiff listed as defendants IDOC officials, as well as employees of Wexford Health Sources ("Wexford") and Wexford itself. Among the defendants Plaintiff named were Jane and Jon Does. On September 30, 2015, Plaintiff was warned that he had 90 days to identify the Jane and John Doe defendants. (Doc. 49, p. 3). He has not done so. Since Plaintiff has failed to identify these defendants, all Jane and John Doe defendants are **DISMISSED without prejudice**. Since a John Doe defendant is the only defendant listed in Count 10, the Court's dismissal of Doe defendants renders Count 10 **DISMISSED without prejudice**.

This matter is before the Court on two motions seeking summary judgment, or partial summary judgment—one filed by Defendants Berry, Harrington, Maciura, and Willis ("IDOC Defendants")[1] (Doc. 109), and the other filed by Defendants Trost and Wexford (Doc. 89). As discussed below, the motion filed by the IDOC Defendants (Doc. 109) is **GRANTED**, and the motion filed by Dr. Trost and Wexford (Doc. 89) is **GRANTED in part and DENIED in part**.

II.  **FACTUAL AND PROCEDURAL BACKGROUND**

In deciding a motion seeking summary judgment, the Court views the facts in the light most favorable to the non-moving party. ***Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012)**. When that party fails to respond to a summary judgment motion, or

---

[1] These defendants are not the only IDOC officials listed as defendants, and their motion seeks partial summary judgment.

any facts set forth in such a motion, the Court can consider those facts set forth by the moving party as undisputed. *See* **FED.R.CIV.P. 56(e).** Plaintiff filed three responses to the motion filed by Defendants Trost and Wexford, but he failed to file a response to the motion filed by the IDOC Defendants. (*See* Docs. 112, 125, & 126). Therefore, though the Court views the facts in the light most favorable to Plaintiff, pursuant to Rule 56(e), it considers the facts set forth by the IDOC Defendants as undisputed.

During all times relevant to this suit, Plaintiff was an inmate incarcerated with the IDOC. (Doc. 1). From 2013 to April 2014, Plaintiff was housed at Menard. (Doc. 90-6, p. 9). On February 3, 2014, there was a physical altercation between inmates in the west dining room. (Doc. 90-6, p. 11–12). Plaintiff was in close proximity to this altercation, and, after the altercation broke out, a "warning shot" was fired. (*Id.* at 12–13, 14). After the warning shot, correctional officers entered the dining hall. (*Id.* at 14). Plaintiff went to the ground when the warning shot was fired. (*Id.* at 13, 14). The responding officers rushed into the dining hall "screaming," and Plaintiff was sprayed in the face with mace, rendering him "essentially blind" at that time. (*Id.* at 14, 17). After being sprayed with the mace, Defendant Buskohl kicked Plaintiff in the face while the other correctional officers were running into the dining hall, "swarming around." (*Id.* at 17–18). According to Plaintiff, Defendant Buskohl only kicked him one time, and no other officer physically assaulted Plaintiff in the dining hall. (*Id.* at 17, 18). At the moment Plaintiff was kicked in the face, he was not able to see exactly how close the other officers were to him, but he testified that they were "in close proximity." (*Id.* at

19). After the incident in the dining hall, Plaintiff was taken to the healthcare unit ("HCU"). (*Id.*).

At approximately 9:15 a.m., Plaintiff presented to the HCU with blood on his face after allegedly being assaulted by an IDOC officer. (Doc. 90-1, p. 2; Doc. 90-2, p. 1). Plaintiff was treated for the injury to his nose and for pepper spray. (Doc. 125, p. 2). He was seen by Dr. Trost, a licensed physician employed by Wexford, a company that has contracted with the State of Illinois to provide health care services to incarcerated inmates. (Doc. 90-1, p. 1). While Dr. Trost contends that Plaintiff had two superficial injuries—a small laceration on his nose, and a small abrasion over his left eye, (Doc. 90-1, p. 2), Plaintiff contends that he was bleeding so much that the nurse attending to him asked if he was a hemophiliac (Doc. 125, p. 2). The nurse attempted to stop the bleeding to his nose by putting gauze in it. (*Id.*). Plaintiff told Dr. Trost that he was in pain; however, Dr. Trost never prescribed Plaintiff any medication, including pain medication. (*Id.*). Dr. Trost does not dispute that Plaintiff did not receive any pain medication. (Doc. 90-1, p. 2). Plaintiff was treated with an antibiotic ointment and a Band Aid, and Dr. Trost determined that no further treatment was necessary. (*Id.*).

On the same day, after being seen by medical staff at the HCU, Plaintiff was taken to Internal Affairs. (Doc. 90-6, p. 20). He was asked questions by Defendants Hect, Spiller, and Reichert about the incident in the dining hall. (*Id.* at 21). According to Plaintiff, during the interview he was physically assaulted by Defendants Spiller and Reichert. (*Id.*). After this second assault, Plaintiff was taken back to the HCU and then

to segregation. (*Id.* at 22 – 23).

After the incident with Internal Affairs, Plaintiff presented to the HCU at roughly 10:15 a.m. (Doc. 90-1, p. 2). According to Dr. Trost, Plaintiff had a quarter-sized abrasion to his left hairline with a small amount of controlled bleeding as well as bleeding from Plaintiff's nostrils. (*Id.*). Plaintiff claims that his injuries occurred when Defendant Reichert slammed his head against a metal bar protruding from the ground. (Doc. 125, p. 3). He notes that his head wound included swelling covering a large surface. (Doc. 125, p. 3; Doc. 90-4.). Plaintiff claims that upon receiving the blow to the head, he saw stars, heard ringing in his ears, felt extreme pain, and was disoriented. (Doc. 125, p. 4). He claims that the incident with Internal Affairs occurred in the HCU and that one of the nurses was a couple of rooms away. (*Id.*). A nurse treated Plaintiff's wound by putting ointment on it and informed him that the large lump on his head would probably require an x-ray. (*Id.*). She told Plaintiff that his wound would not require stitches. (*Id.*).

Plaintiff taken to the main HCU and was again treated by Dr. Trost and another nurse. (*Id.* at 5). Plaintiff's nose was still bleeding, and he was disoriented. Despite his condition, he still managed to tell Dr. Trost that he was in pain and that he thought his nose was broken. (*Id.*). Plaintiff asked for x-rays of both his head and nose, but Dr. Trost refused. (*Id.*). Dr. Trost also would still not prescribe any pain medication. (*Id.*). Plaintiff was given a tetanus shot. (*Id.*). According to Dr. Trost, when he saw Plaintiff, he saw no evidence that his nose was displaced or broken. (Doc. 90-1, p. 2). Plaintiff,

however, contends that his nose was displaced or broken and is still displaced. (Doc. 125, p. 6). Based on his findings, Dr. Trost also did not believe that pain medication was medically necessary. (Doc. 90-1, p. 2). Plaintiff, for his part, notes that he specifically informed the doctor that he was in pain and takes issue with not receiving pain medication upon presenting with visible open wounds. (Doc. 125, p. 6). Plaintiff admits that he has received pain medication and x-rays on other occasions, however. (Doc. 90-6, p. 70).

After leaving the HCU, Plaintiff claims that he filed various medical requests by depositing them in the outgoing mail in the segregation unit. (*Id.* at 57). He testified that officers collected the mail but that he could not testify whether Dr. Trost personally reviewed any of his medical requests to determine whether to grant him a medical pass. (*Id.*). The only remaining sign or symptom of Plaintiff's injuries at this time is his slightly displaced nose. (*Id.* at 60 – 61). Plaintiff has denied any residual pain or trouble breathing as a result of the displacement and has agreed with it being categorized as cosmetic. (*Id.* at 60).

On February 6, 2014, Plaintiff appeared before a disciplinary committee relating to the incident during the Internal Affairs interview. (Doc. 110-2, p. 1). Immediately thereafter, another disciplinary hearing was held regarding the incident in the dining hall. (Doc. 110-1, p. 1). The Adjustment Committee report indicates that Defendants Willis, Berry, and Maciura were witnesses to the events in the dining hall. (Doc. 110-1, p. 1). Plaintiff was found guilty of the charged violations at both hearings, and

Defendant Harrington signed off on the recommended disciplinary actions. (Doc. 110-1, p. 1, 2; Doc. 110-2, p. 1, 2). Plaintiff alleges that he was given no notice of the disciplinary hearings and was not allowed to call witnesses. (Doc. 90-6, p. 26). The only two officials involved in the hearing were Defendants Hart and Hughes. (*Id.* at 28; Doc. 110-1, p. 1; Doc. 110-2, p. 1).

### III. LEGAL STANDARDS

#### a. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment motions. The rule states that summary judgment is appropriate only if the admissible evidence considered as a whole shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Archdiocese of Milwaukee v. Doe*, **743 F.3d 1101, 1105 (7th Cir. 2014) (citing FED.R.CIV.P. 56(a))**. The party seeking summary judgment bears the initial burden of demonstrating – based on the pleadings, affidavits and/or information obtained via discovery – the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, **477 U.S. 317, 323 (1986)**. A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 248 (1986)**. *Accord Bunn v. Khoury Enterpr. Inc.*, **753 F.3d 676 (7th Cir. 2014)**.

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Anderson v. Donahoe*, **699 F.3d 989, 994 (7th Cir. 2012);** *Delapaz v. Richardson*,

**634 F.3d 895, 899 (7th Cir. 2011)**. As the Seventh Circuit has explained, as required by Rule 56(a), courts "set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.*, **756 F.3d 542 (7th Cir. 2014)**.

b. **Failure to Protect**

Although, under the Eighth Amendment, prison officials are required to protect inmates from one another, not every injury caused by another inmate translates into constitutional liability for prison officials responsible for the victim's safety. *Farmer v. Brennan*, **511 U.S. 825, 833-34 (1994);** *Zarnes v. Rhodes*, **64 F.3d 285, 289 (7th Cir. 1995)**. To recover on a failure to protect claim, an inmate must demonstrate that prison officials were "deliberately indifferent" to a sufficiently serious risk of harm to the inmate. *Mathis v. Fairman*, **120 F.3d 88, 91 (7th Cir. 1997);** *Zarnes*, **64 F.3d at 290**. A claim that a prison official was deliberately indifferent to such a risk has both an objective component and a subjective component. *Farmer*, **511 U.S. at 834**. The objective component is that the inmate must demonstrate that "he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer* **511 U.S. at 834**. To satisfy this objective prong, a plaintiff must allege not only that he or she experienced, or was exposed to, a serious harm, but also that there was a substantial risk beforehand that the serious harm actually might occur. *Brown v. Budz*, **398 F.3d 904, 910 (7th Cir. 2005).** Courts have found that an inmate who has been assaulted has experienced a

substantially serious harm. *Id.*

The subjective component is that the inmate must demonstrate prison officials are "deliberately indifferent" to the risk of harm and that such "deliberate indifference" constitutes a state of mind more blameworthy than mere negligence. *Farmer*, **511 U.S. at 834**. To be held liable for deliberate indifference, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* **at 837**. In other words, to be deliberately indifferent, a prison official must have actual knowledge of a substantial risk that an inmate would be exposed to attacks and threats on his life by prisoners and disregarded that risk by intentionally refusing or failing to take reasonable measures to deal with the problem**.** *See Billman v. Ind. Dep't of Corr.***, 56 F.3d 785, 788 (7th Cir.1995) (stating that prison employees acted with deliberate indifference to an inmate's safety if the prison employees are aware of a serious threat and do nothing);** *Davis v. Carter***, 452 F.3d 686, 696 (7th Cir. 2006) ("Deliberate indifference requires that a prison official subjectively know of and disregard a substantial risk of harm.");** *Sowewimo v. Hennrich***, 81 F. App'x 893, 894 (7th Cir. 2003)**. Mere negligence, or even gross negligence, is not enough to state a claim of deliberate indifference under the Eighth Amendment. *Daniels v. Williams***, 474 U.S. 327, 332 (1986);** *Sowewimo***, 81 F. App'x at 894–95**. Moreover, prison employees acted with deliberate indifference to an inmate's safety only if the exposure was done "gratuitously." *Riccardo v. Rausch***, 375 F.3d 521, 525 (7th Cir. 2004) ("The qualification 'gratuitously' is important, because**

**prisons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more.")**.

  I.  **Deliberate Indifference to Serious Medical Needs**

Prison officials violate the Eighth Amendment's proscription against "cruel and unusual punishments" if they display deliberate indifference to an inmate's serious medical needs.  *Greeno v. Daley*, 414 F.3d 645, 652–53 (7th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotation marks omitted)).  *Accord Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) ("**Deliberate indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution.")**.  A prisoner is entitled to reasonable measures to meet a substantial risk of serious harm — not to demand specific care.  *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1074 (7th Cir. 2012) **(stating that a prison doctor "is free to make his own, independent medical determination as to the necessity of certain treatments or medications, so long as the determination is based on the physician's professional judgment and does not go against accepted professional standards");** *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).  Although a prison official may not continue a course of treatment he knows is blatantly ineffective, prisoners are not entitled to receive unqualified access to healthcare.  *See Holloway*, 700 F.3d at 1073-74.  A doctor may provide the care he feels is reasonable so long as it falls within a "range of acceptable courses based on prevailing standards in the field." *Id.* at 1073.

To prevail, a prisoner who brings an Eighth Amendment challenge of constitutionally-deficient medical care must satisfy a two-part test. *Arnett v. Webster*, **658 F.3d 742, 750 (7th Cir. 2011)**. The first prong is whether the prisoner has shown he has an objectively serious medical need. *Arnett*, **658 F.3d at 750**. *Accord Greeno*, **414 F.3d at 653**. A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated. *Gayton v. McCoy*, **593 F.3d 610, 620 (7th Cir. 2010)**. *Accord Farmer v. Brennan*, **511 U.S. 825, 828 (1994)** (violating the *Eighth Amendment* requires "deliberate indifference to a *substantial* risk of *serious* harm.") (internal quotation marks omitted) (emphasis added). Only if the objective prong is satisfied is it necessary to analyze the second, subjective prong, which focuses on whether a defendant's state of mind was sufficiently culpable. *Greeno*, **414 F.3d at 652-53**.

Prevailing on the subjective prong requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *Greeno*, **414 F.3d at 653**. The plaintiff need not show the defendant literally ignored his complaint, just that the defendant was aware of the serious medical condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, **546 F.3d 516, 524 (7th Cir. 2008)**.

IV.    ANALYSIS

### a. IDOC Defendants

Summary judgment is appropriate as to the movant IDOC Defendants. Count II of Plaintiff's Complaint alleges that Defendants Willis, Berry, and Maciura violated Plaintiff's Eighth Amendment rights in failing to intervene and stop Buskohl's assault of Plaintiff. There is not sufficient evidence in the record, however, to demonstrate that these three defendants had knowledge that Buskohl was either going to strike Plaintiff prior to the assault or that they witnessed the assault and did nothing. While Plaintiff testified that the other officers in the dining hall were in close proximity, he could not testify as to exactly how close they were to him. Regardless, though it is known that Defendants Willis, Berry, and Maciura were in the dining room during Plaintiff's assault, simply being in the same room is not sufficient. Plaintiff must demonstrate that the three defendants had subjective knowledge of a serious risk of harm to Plaintiff that was disregarded. The record is devoid of any evidence to allow a trier of fact to infer those defendants knew that Plaintiff was being assaulted or would be assaulted. It would require a great deal of speculation to determine that Willis, Berry, and Maciura were deliberately indifferent to Plaintiff's assault. Therefore, summary judgment is appropriate as to Count II.

Plaintiff also cannot recover from Defendant Harrington for the allegedly procedurally deficient Adjustment Committee hearings. Count 6 of Plaintiff's Complaint alleges a Fourteenth Amendment due process violation against Defendants Hughes, Hart, and Harrington in connection with Plaintiff's disciplinary tickets and

hearings. The problem for Plaintiff, however, is that Defendant Harrington was not present at or involved in the Adjustment Committee hearings. In a § 1983 case, a defendant cannot be held liable via the doctrine of *respondeat superior*. **Perkins v. Lawson, 312 F.3d 872, 875 (7th Cir. 2002)**. To be held individually liable, a defendant must have personal responsibility for any violation of a constitutional right. **Sanville v. McCaughtry, 266 F.3d 724, 740 (7th Cir. 2001)**. An official may be held liable, however, if he "know[s] about the conduct and facilitate[s] it, approve[s] it, condone[s] it, or turn[s] a blind eye" toward it. **Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995) (citations omitted)**.

There is not enough evidence in the record to hold Defendant Harrington liable on Plaintiff's Fourteenth Amendment claim. Only Defendants Hart and Hughes were involved in the Adjustment Committee hearings, and there is no evidence in the record to suggest that Defendant Harrington was present. The only evidence of any involvement by Defendant Harrington is his signature approving the Adjustment Committee's disciplinary recommendations. Harrington's mere signature of approval is not sufficient to hold him liable, however. Though he approved the committee's recommendations, there is no evidence that Defendant Harrington had any knowledge of the hearings' alleged procedural deficiencies and approved of or condoned those deficiencies by approving the disciplinary recommendations. To ask a jury to find that Defendant Harrington was aware of and approved the alleged due process violations based solely on Harrington's signature approving the Adjustment Committee's ultimate

recommendations would be to invite the jury to speculate as to Harrington's knowledge. Summary judgment is therefore appropriate as to Plaintiff's claims against Defendant Harrington in Count 6.

### b. Dr. Trost & Wexford

Count 8 of Plaintiff's Complaint raises claims against Dr. Trost for deliberate indifference to serious medical needs. Plaintiff's claims against Dr. Trost shall go forward only as they relate to Trost's failure to provide Plaintiff with pain medication and treat his broken nose. The Eighth Amendment protects inmates from a lack of medical care that "may result in pain and suffering which no one suggests would serve any penological purpose." ***Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016) (quoting *Estelle*, 429 U.S. at 103) (internal quotations omitted)**. Viewing the facts in Plaintiff's favor, Plaintiff was disoriented and in a great deal of pain after receiving a blow to the head on two separate occasions. On each occasion, he informed Dr. Trost of his pain, but Dr. Trost did not prescribe Plaintiff pain medication. Based on these facts, a jury could reasonably find that Dr. Trost willfully ignored Plaintiff's complaints of pain and was deliberately indifferent to his serious medical need.

Plaintiff also complained to Dr. Trost about his broken nose, which he claims is still displaced. If Plaintiff's nose is currently displaced, then it is reasonable for a juror to infer that such displacement was visible to Dr. Trost in the HCU on February 3, 2014. If Dr. Trost knew about Plaintiff's broken nose and did nothing, then he could be liable for deliberate indifference under the Eighth Amendment.

As for Defendant Wexford, summary judgment is appropriate as to Plaintiff's claims. Plaintiff's claims against Wexford allege that it had a policy or practice of failing to train its staff to provide adequate medical care, instead opting to elevate the importance of cost of care over the quality of care provided. There is not sufficient evidence in the record to demonstrate Plaintiff's can recover on these claims. For instance, Dr. Trost's refusal to provide Plaintiff with pain medication on two encounters on the same day is not evidence of a widespread Wexford policy or practice to not provide pain medication to cut costs, particularly when Plaintiff admitted to receiving pain medication on other occasions. Further, there is simply no evidence to demonstrate that Wexford fails to adequately train its medical staff. Based on the record before the Court, no jury could reasonably find that Wexford had the policies or practices alleged by Plaintiff.

V. **CONCLUSION**

For the above reasons, the Defendants Willis, Berry, Harrington, and Maciura's motion for summary judgment (Doc. 109) is **GRANTED**. As a result, Count 2 shall not proceed to trial, and Plaintiff's claims in Count 6 proceed against Defendants Hughes and Hart but not Defendant Harrington. Defendant Wexford and Trost's motion for summary judgment (Doc. 89) is **GRANTED in part** and **DENIED in part**. The motion is **GRANTED** as to all claims against Wexford, and, as a result, Count 9 shall not proceed to trial. The motion is **DENIED** as to Plaintiff's deliberate indifference claim against Dr. Trost for failure to provide pain medication and to treat his broken nose only (Count 8).

The motion is **GRANTED** as to all other claims in Count 8.

All claims against Jane and John Doe defendants are **DISMISSED without prejudice**. As only a John Doe defendant is named in Count 10, that count is **DISMISSED without prejudice**.

The following counts, as identified in the Court's threshold order (Doc. 5), remain pending:

- **Count 1:** Eighth Amendment excessive force claim against Defendant Buskohl;
- **Count 3:** Eighth Amednment excessive force claim against Defendants Reichert and Spiller;
- **Count 4:** Eighth Amendment failure to protect claim against Defendant Hecht;
- **Count 5:** First Amendment retaliation claim against Defendants Reichert and Spiller;
- **Count 6:** Fourteenth Amendment claim against Defendants Hughes and Hart; and
- **Count 8:** Eighth Amendment deliberate indifference claim against Dr. Trost for his alleged failure to treat Plaintiff's broken nose and pain.

The Clerk of Court is **DIRECTED** to enter judgment for Defendants Willis, Berry, Maciura, Harrington, and Wexford and against Plaintiff at the close of the case.

IT IS SO ORDERED.

DATED: September 5, 2017

s/ *Michael J. Reagan*
MICHAEL J. REAGAN
Chief Judge
United States District Court